805 F.2d 1035
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Maria PESTE; Ioan (Joan) Peste; Nicolae Vercerdea; Elena
Vercerdea; Dumitru Saulean; Veta Saulean; Ioan
(Joan) Oltean; Maria Oltean; George
Marcu; Trandafira Marcu,
Plaintiffs-Appellants,
v.
The FIRST NATIONAL CITY BANK OF ALLIANCE, Defendant-Appellee.
 No. 85-3979.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1986.
 
 Before KENNEDY and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is one of the rare times that probate matters are litigated under federal jurisdiction. The plaintiffs, residents of Romania, appeal an adverse breach of fiduciary duty claim against the bank as executor of the estate of John Marcu.
 
 
 2
 John Marcu of Alliance, Ohio, died testate on March 11, 1982, and his will was probated on March 19, 1982, with defendant, First National Bank of Alliance, acting as executor. The plaintiffs, certain of his Romanian relatives, allege that the bank failed to protect their rights as residuary legatees under his will in a proceeding attacking the will brought by John Dalalau in the Ohio probate court. Dalalau prevailed in the probate action based on the finding that Marcu had contracted with him to make a will, agreeing that Marcu's entire estate would go to Dalalau. The probate court found, and we agree, that the failure of the plaintiffs to take under the decedent's will was not caused by any negligence on the part of the bank, but rather, by the undisputed existence of the contract between Marcu and Dalalau.
 
 
 3
 The plaintiffs argue here that the district court erred in granting the bank summary judgment. They argue that the judgment was founded on the district court's speculation that plaintiffs could not offer proof which would have changed the outcome of the decision in probate court. The strength of the evidence of a contract to make a will is too overwhelming to accept this argument. Further, plaintiffs had a forum to appeal in the Ohio court system.
 
 
 4
 John Marcu was born in Romania and came to the United States in 1914. He was eighty years old in 1978, had no living relatives in this country, and was looking for someone to take care of him. From letters introduced in the trial in the Ohio probate court, it appears that on March 7, 1978, he wrote his nephew Ioan Dalalau in Romania asking him to see if his son John Dalalau would like to come to America. Marcu wrote that he had real and personal property worth $70,000 and that if John came to Ohio and something happened to Marcu, everything would be left to John.
 
 
 5
 On June 25, 1978, Marcu again wrote to Ioan, confirming John's acceptance of his offer. In June of 1980, John Dalalau gave up his job and with his wife and son, left Romania for the United States. He settled in Alliance, Ohio, and lived there until 1984, caring for Marcu until his death in March of 1982. In his will, Marcu did not leave his entire estate to John Dalalau as promised, and Dalalau filed a complaint against the estate on May 19, 1982. Copies of the complaint and summons were served on the plaintiffs in this action.
 
 
 6
 First National City Bank of Alliance filed an answer on June 22, 1982 which stated that the executor was without knowledge that an agreement to make a will existed. The plaintiffs here did not file an answer, though one of them wrote a letter to the probate judge attacking the Dalalau claim as not furthering Marcu's intent.
 
 
 7
 After denying Dalalau's motion for default judgment, the matter was set for final hearing on November 17, 1982. Alliance Bank received notice of the hearing but the plaintiffs did not. The bank did not appear at the hearing to represent the interests of the plaintiffs nor did it notify them of the time and place of the hearing. On December 8, 1982, attorney Louis Nyerges motioned the probate court to appear on behalf of the plaintiffs. On January 7, 1983, the Stark County Probate Court upheld Dalalau's claim. The court found that Marcu had entered into a contract in writing in which he agreed to make a will devising and bequeathing his entire estate to Dalalau, if he would leave Romania and move to Alliance, Ohio. It found that Dalalau did this in reliance on Marcu's promise and therefore the contract should be specifically performed.
 
 
 8
 Though Nyerges filed a motion for a new trial based, in part, on the ground that plaintiffs did not have notice of the hearing, the motion was denied. When Nyerges later appealed on behalf of the plaintiffs, he did not argue the notice issue, citing only the insufficiency of the evidence that the contract existed. The Ohio appellate court affirmed on August 29, 1983 based on the strength of the evidence, citing Ohio Rev.Code Ann. Sec. 2107.04. After the plaintiffs' motion to vacate the probate court's judgment was denied, they brought the present action for breach of fiduciary duty.
 
 
 9
 In its memorandum opinion, the district court emphasized that the Ohio appellate court had stated that the evidence of the contract was so strong that there could have been no other judgment. It went on to say that under Ohio law "[a]n agreement to make a will takes priority over any other later disposition of property made during the lifetime of any other parties to the agreement." Fitch v. Oesch, 30 O.Misc. 15 (C.P.1971). Thus, for the plaintiffs in this case to have prevailed before the probate court they would have had to show either that no contract existed or that Dalalau failed to perform his part of the agreement. The only evidence the plaintiffs offered consists of their own affidavits and letters written by Marcu, indicating that as of 1981 Marcu no longer intended to leave his property to Dalalau. None of this evidence tends to disprove the existence or performance of the contract. It is clear that Dalalau came to Ohio in reliance on the promise made by his great uncle and that he fulfilled his part of the bargain. These facts are not disputed.
 
 
 10
 We agree with the district court that even if the plaintiffs' position had been prosecuted to its fullest extent, the judgment in the probate court would have been the same.
 
 
 11
 The judgment of the district court is affirmed.